UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE


CRIMINAL ACTION NO. 04-193-KSF

UNITED STATES OF AMERICA                                    PLAINTIFF


V.                                    **OPINION & ORDER**

ALBERT GANIER, III                                         DEFENDANT

* * * * * * * *

This matter is before the Court on the defendant's motion *in limine* to exclude News

Channel 5 reports and related "knowledge" evidence [DE #72]; the defendant's motion *in limine*

to exclude evidence of acts occurring after December 19, 2002 [DE #74]; the defendant's motion

*in limine* to limit proof regarding the scope of the investigation [DE #76]; the defendant's motion

*in limine* to exclude evidence relating to John Stamps [DE #78]; the defendant's motion *in limine*

to exclude evidence of the defendant's relationship with Governor Sundquist [DE #80]; the

defendant's motion *in limine* to exclude evidence of retention of counsel [DE #82]; the

defendant's motion *in limine* to exclude evidence of the date of service of the December 4, 2002,

subpoena on the State of Tennessee [DE #84]; the defendant's motion *in limine* to exclude

evidence relating to the procurement of contracts by ENA [DE #86]; and the government's

motion *in limine* for pretrial rulings on the government's motion *in limine* and the defendant's

related motions [DE #90-2].

Each of the defendant's motions requires a relatively straightforward application of

Federal Rules of Evidence 401 and 403. Pursuant to these rules, evidence is considered relevant

if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence may be excluded, however, even if relevant, "if its probative value is **substantially** outweighed by the danger of **unfair** prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (emphases supplied). With these rules in mind, the Court turns to the pending motions.

## I. DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE NEWS CHANNEL 5 REPORTS AND RELATED "KNOWLEDGE" EVIDENCE

### A. The Parties' Positions

In this motion, the defendant seeks to exclude from admission at trial the following evidence, purportedly offered to show that the defendant was aware of the government's investigation at the time he engaged in the alleged obstruction:

•Testimony of News Channel 5 reporters and personnel regarding the content and basis of their "Friends in High Places" news reports;

•Written transcripts of the news reports;

•Video footage of the news reports; and

•A "talking points" memorandum.

As to the first three items relating to the News Channel 5 investigative series, the parties' stipulation entered June 2, 2005, resolves this portion of the defendant's motion. The stipulation essentially summarizes the content of certain of the reports and includes an admission that the defendant saw the reports when they aired.

However, the parties do not agree on the admissibility of the "talking points" memorandum. This memo, dated December 4, 2002, is an e-mail and attached memorandum

-2-

containing Education Network of America's ("ENA") "standard response to inquiries from the press re: contracts, Sundquist, etc." The defendant directs the Court's attention to the following statements in the "talking points" memo:

> **Mr. Ganier was seen removing files at 7:15 am, doesn't have free access to the building, . .**
>
> *Any entry or departure from the Andrew Johnson building has been made using the state's sign-in and sign-out procedures at the front desk.*
>
> *Mr. Ganier has no recollection of leaving the building at that time on those dates.*

The defendant asserts that he is unaware of any proof that this event, in fact, occurred; when it allegedly occurred; or the contents of the documents he allegedly removed.

The defendant concedes that, with respect to the counts in the indictment pursuant to 18 U.S.C. § 1519, evidence tending to show that he was aware of the government's "investigation into ENA's contracts with the state of Tennessee" is relevant. However, the defendant argues that the "talking points" memorandum has no probative value and should not be admitted in whole or in part. He asserts that this evidence should be excluded because the parties' stipulation is sufficient to establish the defendant's knowledge of both the News Channel 5 reports and the FBI-TBI investigation, as well as the timing of these events.

The defendant further argues that the "talking points" memorandum also contains references to matters that are not the subject of the obstructive conduct alleged in the indictment. These extraneous matters include the defendant's relationship with Governor Sundquist and Lamar Alexander; ENA's prior contracts with the state; John Stamps's ("Stamps") ownership interest in ENA and role as a lobbyist; and the rumor that the defendant removed files from a

-3-

state office building. The defendant argues that these matters, in addition to being irrelevant, are also prejudicial, but does not elaborate.

The defendant asserts that the only portion of the proposed exhibit that is relevant to and carries any probative value with respect to the charged obstructive conduct is the fact that ENA had a standard response to inquiries from the press regarding the matters contained therein; that the defendant was aware of and participated in the formulation of this standard response; and the final entry in the memo, describing the "Alert Manager" system. The defendant argues that the remaining portions of the "talking points" memorandum should be excluded.

The government responds that in filing eight *separate* motions, the defendant is trying to force the Court to view the evidence in isolation and divorced from its proper context, so as to obscure and marginalize its relevance to the defendant's obstruction. The government also contends that the defendant is trying to force the government to try the charges without admitting evidence of the nature and scope of the investigation the defendant was trying to obstruct, or without evidence of the defendant's motive to obstruct.

Turning specifically to the "talking points" memo, the government argues it is not hearsay, but a statement of the defendant because it was adopted by him. Second, the government would not be offering it for the truth of the matters asserted therein, and agrees to redact the portion of the memorandum quoted above. It argues that the purpose of the "talking points" memorandum is to show that the defendant knew that questions regarding ENA's affairs were being raised in public, specifically questions regarding Stamps, Sundquist, and the ConnecTen contracts awarded to ENA. The defendant's knowledge of – and response to – these questions is probative of whether he was concerned enough about these questions to hide

-4-

information relating to them from the grand jury and government investigators. The government also argues that evidence that the information contained in the "talking points" memorandum was "less than candid" is probative of whether the defendant had something to hide in late 2002 and was inclined to cover up certain facts.

As to portions of the "talking points" memorandum that mention Stamps and others, the government argues that it is impossible to separate ENA and the defendant from these people with respect to the deleted documents – these others are specifically named in a large number of the deleted documents themselves, or are involved with the subject matter of the deleted documents

**B.** **Discussion**

The Court finds the defendant's construction of Rule 401 somewhat narrow. The only evidence that would be admissible under his view of the rule is evidence that he was aware of an FBI and/or grand jury investigation into "ENA's contracts with the state." However, the government is entitled to offer proof of the scope and nature of the investigation that the defendant was allegedly trying to obstruct. When describing the investigation, the government used the following language in the indictment:

•Referring to the federal task force, the indictment states that it was "formed to conduct a federal criminal investigation into the circumstances surrounding the awarding of various contracts by certain departments and agencies of the Tennessee State Government." ¶ 3.

•"Prior to December 2002, the federal task force's investigation encompassed, *among other things*, the ENA-ConnecTen contracts, the ARC Grant, the ENA-TEMA solicitations, and various companies associated with Individual A, including Privatization Strategists and Workforce Strategists, LLC[.]" Id. (emphasis supplied).

-5-

The "talking points" memorandum (in redacted form) is relevant in that it arguably provides proof that the defendant was aware of the various subjects of the investigation at a specific point in time and was concerned enough about the investigation to prepare a response, which goes to motive.

This question also dovetails with the "nexus" issue – the requirement that the government prove a nexus between the alleged obstructive acts or documents and the investigations. Without evidence of the subject matter of *both* the documents at issue *and* the investigations, as well as proof of the defendant's knowledge of the same, the government would be unable to make the required showing.

As for Rule 403, the Court is unable to determine how this memorandum in its redacted form would be unfairly prejudicial to the defendant. Thus, the Court will deny the defendant's motion in light of the parties' stipulation and the government's assurance that it will redact the portion of the "talking points" memorandum [DE #73, Exh. 5; Bates # US 4] quoted above.

## II. DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ACTS OCCURRING AFTER DECEMBER 19, 2002

### A. Parties' Arguments

In this motion, the defendant seeks to exclude all evidence that occurred or was created after the date of the last allegedly obstructionist act charged in the indictment, which took place on December 19, 2002. The defendant asks the Court to specifically exclude the following evidence:

> •E-mails between Lisa Cothron of the Tennessee State Department of Education ("SDE") and Dana Lichtenberg (who was with the agency that disbursed federal e-rate funds), dated between December 30, 2002, and January 8, 2003, which discuss the status of e-rate funds and the possible reduction of service by ENA if the funds are not received;

-6-

•An e-mail exchange between SDE Deputy Commissioner Jeff Roberts and Michael Deusinger (with the e-rate agency), dated January 6 and 7, 2003, in which Roberts expresses concern that the level of internet service would be reduced in the absence of e-rate funding; and

•Evidence that Tennessee's Office of Information Resources ("OIR") did not recommend or was "not supportive" of Amendment 2 to the 2002 ConnecTen contract, the amendment that authorized payment to ENA for the ARC Grant, or similar evidence that suggests that the project was later determined to have had limited success.

The defendant argues that this evidence is irrelevant to the question of whether the defendant deleted documents in order to hide evidence of conduct occurring prior to December 2002. Further, the government has not alleged a continuing conspiracy in this case.

Even if somehow relevant, the defendant argues that any probative value is substantially outweighed by the potential for prejudice to the defendant. Trying to show that ENA was "heartless enough to threaten to reduce service levels to Tennessee schools" if it did not get paid can only serve to unfairly prejudice the jury against the defendant. Likewise, the later-revealed fact that the OIR did not support the ARC Grant amendment to the ConnecTen contract and that the Finance & Administration ("F&A") Department decided not to recommend approval of the amendment as originally proposed can only tempt the jury to conclude that because a state agency questioned the merits of the ARC Grant project a month after the alleged obstructive acts, the project had no merit. Finally, the defendant argues that introduction of evidence of acts occurring after December 19 would unduly confuse the jury regarding the issues in this case.

The government responds that the defendant is not entitled to a "blanket order" that no post-December 19th evidence may be admitted. The government argues that some of this evidence is highly relevant to the defendant's motive in deleting the documents at issue or to explain certain pre-December 19th evidence. For example, in November of 2002, the defendant

-7-

wrote an e-mail that, according to the government, shows he was worried about the fact that no "content" (i.e., online teacher training, the expressed purpose of the ARC Grant) was being delivered by ENA to the schools over the expanded bandwidth that ENA was getting paid handsomely to provide under the ConnecTen contract as amended by the ARC Grant. Certain events occurring after December 19th reveal the dubious nature of the ARC Grant project as a whole and, thus, shed light on why the defendant had a motive on December 19th to attempt to conceal documents that related to the project.

The government also disagrees that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. To the extent that the evidence is prejudicial in that it reveals the defendant's questionable dealings or paints him as a man with something to hide, this is not *unfairly* prejudicial, as the defendant is charged with a coverup. As a result, the government asserts, proof of the defendant's dealings, and any fallout from those dealings that has a close temporal connection to the deletion of documents related to those dealings, is highly relevant to motive and, therefore, not *unfairly* prejudicial

Finally, the government asserts that it does not intend to introduce the first two items of evidence specified by the defendant. As to the third item, the evidence would not be offered to show the OIR's opinion with respect to the proposed amendment to ENA's ConnecTen contract. Rather, the government might seek to introduce the document if the defendant takes the position at trial that he had no motive to destroy documents relating to the ARC Grant because of its relatively small value. If that argument is made, the government would offer evidence to show that ENA used the ARC Grant as a springboard to expand the ARC Grant project (i.e., the expanded bandwidth) from the small number of Appalachian schools served by ARC to a huge

-8-

number of schools statewide. In this case, the government says the evidence would be relevant to motive.

In his reply, the defendant argues that the post-obstructive conduct evidence that he seeks to bar does not tend to establish that he engaged in wrongdoing in connection with "the ARC Grant, the ENA-TEMA solicitations, and a campaign fundraiser for a Texas State official" (quoting the indictment). The events that the government intends to introduce were unknown to the defendant at the time he allegedly endeavored to obstruct justice because they had not yet occurred. Therefore, they could have no relevance to the charges in this case and should be excluded.

**B.    Discussion**

Inasmuch as the government has represented that it does not plan to introduce the e-mails between Lisa Cothron (of SDE) and Dana Lichtenberg (of federal e-rate agency) dated between 12/30/02 and 1/8/03 [DE # 75, Exh. 1; Bates # US 483-485] and the e-mails between Jeff Roberts (of SDE) and Michael Deusinger (of federal e-rate agency) [DE #75, Exh. 2; Bates # US 482], this portion of the defendant's motion will be denied as moot.

As to the evidence from the OIR [DE #75, Exh. 3; Bates # US 104-106, 470-77], the government represents that it will not introduce this evidence as part of its case in chief, but may offer it as rebuttal evidence, depending on the defendant's proof. The Court agrees with the defendant that if the government attempts to use this evidence to prove that the defendant knew that the ARC Grant project had no merit, any probative value is substantially outweighed by the danger of unfair prejudice. A third-party's determination regarding the merits of the ARC Grant project is not probative of *the defendant's* knowledge. Therefore, on this point, the defendant's

-9-

motion will be granted. To the extent the government wishes to introduce the evidence as part of its rebuttal, a ruling will have to wait until trial.

## III. MOTIONS REGARDING HOW MUCH EVIDENCE, OTHER THAN THE DELETED DOCUMENTS, THE GOVERNMENT MAY BE PERMITTED TO INTRODUCE AT TRIAL

The defendant has filed several motions that the Court will consider together, as the analysis is essentially the same.

### A. Defendant's Motion *in Limine* to Limit Proof Regarding the Scope of the Investigation

This motion targets the issue raised above: what type of proof the government may introduce regarding the scope of the investigation. The defendant asserts that evidence must be limited to and consistent with the allegations in the superseding indictment, and therefore the government cannot go beyond proof that it was an investigation "into the circumstances surrounding the awarding of various contracts by certain department and agencies of the Tennessee State Government." The defendant argues that neither of the statutes under which the defendant has been charged require any further proof.

As a specific example, the defendant argues that the government should not be permitted to introduce testimony by an investigative agent regarding what he hoped to find, what he expected to find, or even what he in fact found in the course of the investigation. This evidence would constitute hearsay and opinion testimony and carries a high likelihood for unfair prejudice, according to the defense. The defendant does not cite any authority in support of his motion.

The government responds that proof of the full scope of the grand jury investigation and the federal task force investigation is highly probative of why the defendant would have sought

-10-

to conceal the documents he did. The defendant cannot require the government to try him in a vacuum. As the defendant himself has argued elsewhere, under § 1503 the government must prove a nexus between the obstruction and the investigation – i.e., that the defendant's obstruction had the "natural and probable effect" of interfering with the investigation. The government asserts that the jury cannot possibly make that determination without knowing the full scope of the investigation, and the defendant's proposed limitation is not nearly specific enough.

For example, in Count I, the defendant is charged with deleting certain documents, several of which mention Alex Fischer ("Fischer") or Stamps by name, and almost all relating to ENA ventures in which these individuals were involved. In order to assess whether the defendant's obstruction had the natural and probable effect of interfering with the investigation, the jury needs to know that the investigation included activities of Fischer and Stamps that related to the state contracting process. Thus, because of the nexus requirement, the government is entitled to explain to the jury that the defendant's deletion of documents regarding Stamps and Fischer occurred in the midst of an investigation focusing on, among other things, Stamps and Fischer.

According to the government, this motion simply lays the groundwork for the defendant's separate motions which argue that the government should not be able to introduce evidence regarding Stamps or evidence regarding the defendant's friendship with Governor Sundquist, or evidence relating to the procurement of contracts by ENA. As to opinion and hearsay, the government agrees that this should not be permitted – as such, the government will

-11-

present testimony only as to the scope of the investigation, but will not include hearsay or opinion testimony regarding the facts learned in the investigation.

In reply, the defendant argues that the government should not be permitted to use witnesses to state its theories or proof, or offer explanations to the jury of how the defendant's conduct might have interfered with that investigation. It also should not be permitted to introduce evidence of alleged wrongdoing by Fischer or Stamps that did not relate to ENA simply because the government was also investigating those individuals.

**B.    Defendant's Motion *in Limine* to Exclude Evidence Relating to John Stamps**

In this motion, the defendant asks the Court to limit the government's proof regarding John Stamps to evidence that Stamps was a lobbyist employed by ENA, and to exclude other evidence such as evidence of Stamps's conduct relating to Workforce Strategists, his tax violations, and his relationship with Fischer and Sundquist. The defendant identifies the following six categories[1] of evidence that should be excluded:

1.    Evidence that Stamps owned an interest in ENA or any of its predecessors;

2.    Evidence reflecting the amount ENA paid Stamps and/or his company, Privatization Strategists, for lobbying services, and evidence of the execution dates or drafts of contracts between ENA and Stamps and/or Privatization Strategists;

3.    Evidence that ENA considered replacing Stamps as a lobbyist after a new governor was elected;

4.    Evidence that Stamps was under investigation for alleged wrongdoing in connection with entities other than ENA (such as Workforce Strategists and Comprehensive Community Care);

---

[1]    The defendant also identifies specific documents in each category that he seeks to exclude. These are discussed individually in the government's response.

-12-

5. Evidence that Stamps was involved in wrongdoing with individuals other than the defendant (such as Joanna Ediger and/or Alex Fischer); and

6. Evidence that Stamps was indicted for tax fraud and making false statements.

According to the defendant, Stamps is only relevant to this case in relation to an e-mail (described below) wherein he advised the defendant on how to approach an upcoming meeting with Fischer. Given this reference, the jury is entitled to know that Stamps was employed by ENA as a lobbyist and that he knew Fischer. However, any evidence beyond that is irrelevant and carries an unacceptably high risk of unfair prejudice.

As to the first and second categories, the defendant argues that they are not relevant because there is no suggestion that the defendant ever tried to conceal the fact that Stamps owned an interest in ENA or that the defendant tried to hide the amount that Stamps received from ENA for his work as a lobbyist. Further, this evidence is not probative of whether the defendant had a motive to delete any documents. The third category of evidence is not probative of any issue in the case, and the fourth, fifth, and sixth categories of evidence are also irrelevant. The fact that Stamps engaged in wrongdoing in connection with entities other than ENA is not probative of *the defendant's* motive to delete documents. There are no allegations that the defendant is connected to Workforce Strategists, Comprehensive Community Care, or Joanna Ediger, and none of the deleted documents reference any of these subjects.

The likelihood of unfair prejudice, on the other hand, is high, the defendant argues. This evidence would likely raise an unfair and unjustified inference that the defendant was engaged in an illicit financial relationship with Stamps. However, this conduct is neither charged in the indictment nor addressed in the deleted documents at issue.

-13-

The government responds that a wide range of evidence regarding Stamps is crucial in order for the jury to understand (1) the context in which the defendant committed the obstruction; (2) the nature of the document deleted on December 15, 2002, that mentions Stamps and says "I will not leave this in writing"; (3) the nature and context of most of the other documents the defendant is charged with deleting; (4) whether Stamps's connection to the deleted documents might provide the defendant with a motive to delete them; and (5) the effect of the defendant's deletion of documents on the grand jury investigation he is charged with trying to obstruct, a grand jury investigation that was concerned not only with the defendant and ENA, but also in large part with Stamps.

The events of December 2002 did not occur in a vacuum, but in the midst of a long history between the defendant and Stamps, and in the midst of investigations linking together Sundquist, Stamps, Fischer, the defendant, and ENA. Without knowing the full context, including who Stamps was and what he had to do with the defendant, Fischer, and ENA, the jury would be unable to assess whether the context provided a motive for the defendant to commit the alleged acts of obstruction. More specifically, one of the deleted documents was a draft press release whereby Sundquist would announce deployment of the Tennessee Online Emergency Alert System ("TOEAS") (an ENA product). Attached to the draft release were the defendant's typed notes mentioning an upcoming meeting between him and Fischer, outlining Stamps's suggestions for the meeting, and concluding with "**The above are for my notes only . . . I will not leave this in writing**." Without fully understanding Stamps's connection with the defendant, ENA, Fischer, and the TOEAS, the jury cannot understand the document and cannot assess whether the defendant had criminal intent in deleting it.

-14-

The government asserts that other deleted documents, including the letters to Fischer, relate to ENA proposals or solicitations with which Stamps was heavily involved. To even understand the documents, much less why the defendant might want to delete them, the jury needs to know about the persons implicated in the letters, including Stamps. The jury must also decide whether the defendant deleted these Stamps-related documents with the intent to obstruct investigations *focused largely on Stamps*. To do so, the jury must understand Stamps's connection to the events referenced in the documents.

Finally, the government argues that in order to show the "nexus" required for conviction under 18 U.S.C. § 1503 – that the defendant's obstruction had the "natural and probable effect" of interfering with the grand jury's investigation – the government must be permitted to explain how deletion of documents related to Stamps affected a grand jury investigation focused largely on Stamps. Based on the above, the evidence relating to Stamps is probative of the defendant's motive to obstruct and is directly related to his obstructionist conduct, and is not unfairly prejudicial.

As to specific documents or evidence, the government makes the following responses. The government argues that it should be permitted to introduce evidence that Stamps had an ownership stake in ENA, as it is relevant to why Stamps had compelling reasons to engage in a broad range of activities to promote ENA. This, in turn, is probative of why the defendant might have wanted to delete items demonstrating connections between the defendant, Stamps, state officials, and ENA.

The government argues that it should also be permitted to present evidence that ENA paid Stamps and Privatization Strategists $667,000 between July of 1998 and December of 2002.

-15-

The amount of these payments, as well as the circumstances under which Stamps rose to a position to make this much money,[2] are relevant to why the defendant had a motive to obstruct an investigation that was examining connections between the awarding of government contracts and the relationships between people affiliated with the companies being awarded state contracts and high-ranking state officials. The government argues this information is also relevant to whether the News Channel 5 series focusing on Stamps's status as a paid lobbyist for ENA might have caused defendant enough concern about the size and purpose of ENA's payments to Stamps that defendant felt compelled to delete certain documents related to Stamps. The government contends it should be up to the jury to decide why ENA was paying so much to Stamps and whether the size of these payments gave the defendant a motive to obstruct the investigation by hiding the true nature for the reasons for such large payments.

As to evidence that Stamps was under investigation for alleged wrongdoing in connection with entities other than ENA, the government argues that this evidence is highly relevant to the defendant's motive to destroy evidence related to the defendant's and ENA's connections to Stamps. Any investigation into Stamps, regardless of its initial focus on non-ENA matters, could intensify and turn to Stamps's connections to ENA. Thus, the fact that Stamps was under investigation for non-ENA matters could still have motivated the defendant to hide evidence related to Stamps. The government further argues that evidence of wrongdoing by Stamps,

---

[2]    According to the government, before Sundquist became Governor of Tennessee, Stamps ran a failing insurance business and, in 1995, had filed for Chapter 7 bankruptcy. After Sundquist took office and Stamps became a lobbyist, he was paid close to $1.5 million in lobbying fees from companies doing business with the state, as well as receiving additional revenues (over $400,000) from ownership interests in companies that received contracts from the state.

-16-

whether in connection with ENA or other entities, is relevant to the nexus requirement. The investigation of Stamps and non-ENA companies such as Comprehensive Community Care and Workforce Strategies was looking at the same kinds of potential improprieties – government contracting and relationship with government officials -- that relate to the documents the defendant tried to destroy. That investigation also involved the same people, like Fischer, who were involved with ENA.

The government argues that evidence that Stamps was involved in and being investigated for potential wrongdoing with individuals other than the defendant is also probative of the defendant's motive to obstruct the investigation. Evidence of the scope of Stamps's relationship with Fischer is relevant to explain the significance of the relationships between the defendant, Stamps, and Fischer in the context of ENA's pursuit of state contracts and why the defendant would have had a motive to conceal evidence of those relationships. Evidence of Stamps's relationship with Fischer is vital to a basic understanding of one of the deleted documents (mentioning the defendant's upcoming meeting with Fischer and including Stamps's suggestions for the meeting) and the deleted letter to Fischer regarding projects in which Stamps was actively involved.

As to the remaining items, the government represents that it does not intend to introduce the following evidence: (1) a document regarding Stamps's option to purchase shares of ENA; (2) evidence that ENA considered replacing Stamps as a lobbyist once Sundquist left office; (3) evidence regarding Joanna Ediger; and (4) evidence that Stamps was recently indicted for tax fraud and making false statements.

-17-

The defendant replies that the government has misconstrued the *res gestae* doctrine in its response, arguing that the fact that Stamps was a lobbyist for ENA is all that is needed to "complete the story." None of the documents the defendant deleted or the e-mails that might have been deleted under the e-mail retention policy bear any relationship to any of the additional evidence the government seeks to introduce regarding Stamps. Because, the defendant argues, these collateral matters are not part of the *res gestae* of this case and are not probative of the defendant's motive under 404(b), they should not come in at trial.

### C. Defendant's Motion *in Limine* to Exclude Evidence of Defendant's Relationship With Governor Sundquist

As with the Stamps motion, the defendant argues that any evidence of the defendant's friendship with former Governor Sundquist is irrelevant and prejudicial. He contends that the only purpose the government has in seeking to admit this evidence is to invite the jury to infer that the defendant's relationship with Sundquist allowed him to win business for ENA with the state and that such conduct was wrongful. However, the government has no evidence that Sundquist illegally or improperly interceded on ENA's behalf in connection with the TEMA solicitations or the ARC Grant. Further, none of the documents that the defendant allegedly deleted reflect anything about a personal friendship with Sundquist. Finally, the propensity of this evidence to create confusion, arouse prejudice, and mislead the jury is high. The defendant asserts that the only purpose of the evidence is to suggest a picture of collusion and invite the jury to draw inferences of impropriety.

The government responds that the evidence is highly probative of the overlapping connections and strength of the relationships between the defendant, Sundquist, Fischer, and Stamps. Evidence of these close ties demonstrates why, in the midst of criminal and grand jury

-18-

investigations into the awarding of state contracts to people with connections to Sundquist and other high-ranking state officials, the defendant would want to conceal documents that revealed a close relationship between him, Sundquist's Deputy Governor (Fischer), and Sundquist's good friend (Stamps), as well as documents that discuss the procurement of state contracts.

The government cites three reasons why the defendant's argument should be rejected. First, the defendant is wrong in his assumption that the government has no evidence that Sundquist improperly interceded on behalf of ENA. There is, in fact, some evidence that Sundquist interceded in some way on behalf of ENA with respect to at least one contract, and the government may introduce such evidence in its rebuttal case if necessitated by the defendant's proof. Second, a jury could easily infer that some of the deleted documents reflect and were created by the defendant because of his close relationship with Sundquist. Third, half of the deleted documents mention Fischer and Stamps by name, and almost all relate to ENA ventures in which Fischer and/or Stamps were heavily involved. The government will show that these projects had characteristics that gave the defendant a motive to cover them up, while the defendant intends to rebut this showing. Thus, a key factual issue is *why* Fischer and Stamps would seek to assist the defendant in such projects. In order to answer this question, the government argues, the jury should be permitted to hear evidence of the circle of friendships that includes the defendant, Stamps, Fischer, and Sundquist.

Finally, the government argues there is nothing inherently confusing, prejudicial, or misleading about this evidence. The defendant's mere friendship with Sundquist has no tendency to invite the jury to draw inferences of impropriety. While the government is not interested in throwing out the Governor's name gratuitously in the hopes it will inflame the jury,

-19-

the fact is that this case is, by definition, about a grand jury investigation into the circumstances surrounding the award of state contracts to those close to Sundquist. Thus, the defendant's closeness to Sundquist is necessarily relevant, and limited evidence is proper as noted above.

### D. Discussion

As to the evidence that is the subject of these motions, the Court is unable to determine how the government can prove a nexus as required by §§ 1503 and 1519 between the deleted documents and the investigation without putting on much of this proof. The defendant's requests to limit proof of the investigation's scope to "ENA's contracts with the state," to limit the evidence regarding Stamps to the fact that he was a lobbyist for ENA, and to exclude all proof regarding Sundquist is simply too limiting.

The Court initially viewed certain of this evidence to be potentially troubling. However, the government has agreed not to introduce the following evidence that the Court at first considered objectionable: opinion and hearsay evidence regarding the facts learned in the investigations at issue; a letter from the defendant to Stamps regarding Stamps's option to purchase shares of ENA [DE #79, Exh. 1; Bates # US 145]; evidence that ENA considered replacing Stamps as a lobbyist [DE #79, Exh. 3; Bates # US 173]; evidence regarding Joanna Ediger [DE #110 at p. 40]; evidence that Stamps was indicted for tax fraud and making false statements [DE #110 at p. 40]; and, as part of their case-in-chief, evidence that Sundquist interceded in some manner on behalf of ENA with respect to at least one contract [DE #110 at pp. 41-42].

However, other evidence regarding Stamps requires further discussion. The defendant asks the Court to exclude evidence of the investigation of alleged wrongdoing by Fischer or

-20-

Stamps that did not relate to ENA (e.g., Stamps's involvement with contracts issued to Privatization Strategists and Workforce Strategists). In reviewing the deleted documents, none of them expressly mention Stamps's or Fischer's involvement with contracts with entities other than ENA. However, the Court must keep in mind the nexus requirement and the question of motive. A jury would essentially be unable to decipher Stamps's role in this case without knowing Stamps's background, his connections with Sundquist and Fischer, and his importance to the defendant and ENA. The same is true of evidence regarding Sundquist, who apparently was the impetus for the investigations. Therefore, the Court finds that evidence that Stamps and others were *under investigation* for alleged wrongdoing in connection with entities other than ENA is relevant.

However, evidence that Stamps was involved in *wrongdoing* with individuals other than the defendant (such as Joanna Ediger and/or Fischer) is not relevant or probative and would be unduly prejudicial to the defendant. The government has represented that it will not introduce any evidence of wrongdoing with respect to Joanna Ediger, but with respect to Fischer and others, the Court will grant this portion of the defendant's motion. As to the remaining evidence that is at issue in these motions, the Court finds that it is not so unfairly prejudicial as to warrant exclusion. Accordingly, the Court will deny the remaining motions, with the exception noted herein.

## IV. DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO THE PROCUREMENT OF CONTRACTS BY ENA [DE ## 86/87]

### A. Parties' Arguments

In this motion, the defendant seeks to exclude evidence of efforts by ENA or its predecessor, Technology Partner, LLC, to procure contracts from the state of Tennessee, other

-21-

than evidence of documents relating to the ARC Grant, the ENA TEMA solicitations, and the Texas fundraiser. The defendant argues that other evidence, such as procurement of the 1996 contract between Technology Partner and Tennessee, are neither relevant nor probative of motive, are unduly prejudicial, and present issues collateral to those presented in the indictment. He contends that this evidence is not related to conduct charged in the indictment and is not inextricably intertwined with charged offenses, and identifies the following specific categories of evidence that should be excluded:

1. The 1996 contract between Technology Partner and the SDE; the 1998 ConnecTen contract between ENA and the SDE; and the 2002 ConnecTen contract between ENA and the SDE;

2. Evidence relating to ENA's efforts to sell other services to the state that are different from the projects or proposals that are the subject of the deleted documents;

3. Sales reports and similar evidence that mention services related to the deleted documents (mainly the ARC Grant project and the TEMA proposal), but also address unrelated projects or proposals; and

4. Evidence that relates to the subject matter of deleted documents, but provides no needed background information

According to the defendant, the admissibility of this evidence turns on whether it is *res gestae* evidence. He argues that the Sixth Circuit imposes severe limitations in terms of temporal proximity, causal relationship, or spatial connections that must exist between the other acts and the charged offense. United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000). Hardy requires the Court to analyze the proffered evidence against these limitations.

As to the first two categories of evidence, the defendant contends that they do not explain the offense charged in the indictment or complete any story. The defendant does not object to

-22-

the government's contention that the fact that ENA was and has been the ConnecTen contractor is necessary background, but does object to introduction of evidence regarding the amount of the funds paid to ENA under the contracts, the fact that ENA purchased the ConnecTen network, as well as the sole source justification for the 1996 contract or anything else having to do with past procurement history.

With respect to the evidence in the third and fourth categories, the defendant argues that none of it was deleted or otherwise concealed by the defendant. Thus, the government should not be allowed to insinuate impropriety from evidence that showed ENA hoped or expected to receive revenues from the ARC Grant; that ENA personnel assisted in preparation of the grant applications; that the defendant and other ENA employees provided responses to ARC questions about the grant application and inquired about its status; that Fischer monitored and took an interest in the application process; or that ENA sought to sell a separate toolbar and emergency alert system to TEMA by letter dated November 5, 2001. If the government has evidence of illegal conduct, the defendant argues that it should indict for that conduct, rather than insinuating wrongdoing by introducing conduct that was not illegal or wrong or unethical, but was appropriate and commonplace.

The government responds that the defendant's argument fails for several reasons. First, it argues that early ENA contracts are squarely implicated in e-mails that the defendant sought to have deleted in Count I of the indictment. Several of these e-mails related directly to the first ConnecTen contract and the 1996 no-bid contract awarded to Technology Partner and show a romantic relationship between the defendant and Shrago. Shrago was the RFP Coordinator and Project Director for the ConnecTen contract and the government has evidence that she actively

-23-

assisted the defendant in getting the no-bid contract for the defendant's brand new company, Technology Partner. Some of the e-mails the defendant tried to have deleted contain facts related to the first ConnecTen contract as well as the 1996 no-bid contract with Technology Partner that the defendant might have wished to hide from the grand jury.

Second, the government argues that there is no authority for limiting evidence to that which is "necessary" for the jury to understand whether an element of the crime exists. All that the Federal Rules of Evidence require for admissibility is that the evidence of ENA's contracting efforts have a clear tendency to make the defendant's criminal intent more probable than it would be without the evidence of ENA's contracting efforts. Thus, evidence of improprieties with respect to ENA's contracting efforts is clearly admissible. Evidence of events that the defendant might wish to hide from investigators regarding ENA's contracting history is relevant and probative of whether the defendant intended to obstruct an investigation into the contracting history of ENA and other companies. The government asserts that this is not simply *res gestae* evidence, but is also admissible under 404(b) as evidence of the defendant's motive and intent.

Responding to the individual categories of evidence, the government argues that the first category is admissible because evidence that the defendant had reason to fear investigation into any of these matters is relevant to the key issue of whether he had an intent to obstruct the investigation. According to the government, all of the items the defendant seeks to exclude are not separate items that exist in a vacuum; rather, ENA's contracting history, its relationship with Stamps, Stamps's other dubious dealings with the state, ENA initiatives referred to in the deleted documents, the deleted documents themselves, and the grand jury and agency investigations are all related and all relate to the key issues of the defendant's state of mind and motivation, as well

-24-

as providing the nexus between the grand jury investigation and the defendant's alleged endeavor to obstruct.

Regarding the second category of evidence, the government asserts that it does not intend to offer evidence of ENA's efforts to obtain contracts other than items that are covered in the first category or items that were the subject of one or more of the allegedly deleted documents. Further, the government does not intend to offer into evidence any of the documents identified by the defendant in his "Collective Exhibit 2."

Similarly, the government does not intend to offer into evidence any of the documents identified by the defendant in his "Collective Exhibit 3." Regarding the fourth category, the government has noted above that evidence need not be "necessary" to be admissible, but need only to be relevant.

Lastly, the government addresses the defense assertion that if the government has evidence of illegality of ENA's affairs, it should indict. The government argues that the question is not whether ENA's underlying affairs should be the subject of a separate indictment, but whether the defendant had the requisite intent for the crimes charged in *this* indictment. Because the government is required to prove intent and because intent is a key element in this case, the government should be permitted to introduce evidence of intent. As to whether the contracting practices in this case are "commonplace," that is not for the defendant to decide; the defendant states it will offer evidence refuting any alleged impropriety and the government welcomes this effort. In fact, that is how the jury system works – the government and the defendant each assert differing versions and interpretations of events and the jury decides which one to believe and,

-25-

more specifically, whether those events provided the defendant with a motive to commit the crimes charged.

**B.    Discussion**

This motion is somewhat in the nature of the motions outlined above. Again, the Court determines that the nexus requirement dictates that this evidence come in. The government has agreed not to introduce the evidence that the Court finds to be the least probative and potentially the most prejudicial (e.g., evidence relating solely to the defendant's romantic relationship with Shrago), but evidence as outlined in the first category is relevant to providing background information as well as being probative of the defendant's intent and motive to delete some of the e-mails at issue

The defendant relies primarily on cases regarding *res gestae* evidence for the argument that this proposed evidence does not have sufficient temporal proximity, causal relationship, or spatial connections to the acts charged in the indictment to warrant admission  However, this argument ignores the fact that the government must prove a nexus between the documents that allegedly were or would have been deleted, on the one hand, and the investigations, on the other Further, the government would be unable to prove why it believes the defendant had a motive to delete these documents without explaining something about the people and projects referred to in the documents and the history of the projects at issue.

In light of the government's representation that it will not introduce "Collective Exhibit 2" [DE #87, Exh. 2; Bates # US 238-39, 304-14, 319-21, 334, 336-37, 353-357, 359-365] and "Collective Exhibit 3" [DE #87, Exh. 2; Bates # US 131-44, 157-58, 161-68, 172, 175-76], the Court will deny the defendant's motion.

-26-

## V. DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF RETENTION OF COUNSEL

In its response, the government stated that it does not intend to introduce this evidence, so the motion is now moot. In light of the representation of the government that will not, in its case in chief, introduce evidence of the defendant's retention of counsel *prior to* the time period of the allegedly obstructionist acts [DE #110 at p.3 n.2], an e-mail from defendant to Aubrey Harwell dated 12/17/02 [DE #33, Exh. B], and evidence of the fact of Neal & Harwell's representation of the defendant and/or ENA *during* defendant's alleged obstructionist conduct [DE #110 at p. 44], the Court will deny this motion as moot.

## VI. DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE DATE OF SERVICE OF THE DECEMBER 4, 2002, SUBPOENA ON THE STATE OF TENNESSEE

### A. Parties' Arguments

In this motion, the defendant seeks to preclude the government from proving that the December 4, 2002, grand jury subpoena issued to the custodian of records for the Office of Information Resources ("OIR") was served on the state on December 5, 2002, or any other time. The subpoena commanded the OIR to produce e-mails to and from a number of individuals, including the defendant. According to the indictment, the defendant was aware of this subpoena "no later than December 13, 2002."

The defendant argues that the government has no evidence that he was aware of service of the OIR subpoena prior to the time he allegedly requested or suggested the implementation of an e-mail retention policy on December 8 and or 9, 2002. He asserts that there is also no evidence that he was aware that the OIR subpoena called for the production of e-mails to and from him. The defendant concedes that the fact of the date of service has *de minimus* probative

-27-

value as to whether the defendant knew of the subpoena, but argues that it will cause the jury to improperly *speculate* that the communications regarding ENA e-mails on December 8 and 9 were a consequence of his knowledge of that subpoena, when there is no evidence to support such a conclusion.

The government responds that the date of service of the subpoena is probative of two key facts: (1) that a grand jury investigation was actually ongoing at the time the defendant tried to obstruct it and (2) that the defendant was aware of the existence of the grand jury investigation during the time alleged in Count I of the indictment. The date of service of the subpoena on the state, coupled with the fact that the defendant was "anxious" to implement an e-mail retention policy, are in and of themselves proof that the defendant learned of the subpoena for his e-mails on or before December 8th. The government further argues that a jury is permitted to make reasonable inferences from the evidence and it is reasonable to infer that a man with many contacts in state government had learned of the service on the state government of a subpoena seeking e-mails to or from him on or near the date of service. Reasonable inferences are not speculation, and the jury is not only permitted but *encouraged* to draw such inferences.

The defendant replies that the government misunderstands his argument, and that the government should not be able to introduce the date of the subpoena *unless* it has evidence that the defendant was aware of the subpoena on or before December 8th or 9th, 2002. Otherwise, he argues, introducing this evidence invites speculation on the issue of the defendant's notice.

### B. Discussion

When dealing with circumstantial evidence such as this, the jury is permitted to draw reasonable inferences so long as the evidence is relevant and not substantially unfairly

-28-

prejudicial. As for the difference between a reasonable inference and speculation, the Court finds the following passage to be helpful:

> Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.

Lavender v. Kurn, 327 U.S. 645, 653 (1946). While this statement was made in a civil case under the Federal Employers' Liability Act and not a criminal matter, the Court does not believe that this proposition is confined to such cases.

The defendant here argues that there is no evidence that he knew of the service of the subpoena when he pushed for the e-mail retention policy. However, the service of the subpoena, along with the defendant's close ties to persons in the Sundquist administration and the SDE, *is* the evidence. It would be rational and logical to conclude that someone with the OIR may have told their good friend (the defendant) that a subpoena had been served on the state and that it focused in part on him. It would also be rational and logical to conclude that, given the amount of attention that the defendant and presumably others were devoting to the coverage of the investigations, the defendant may have been told about the subpoena right after it was served. Thus, the timing of the service of the OIR subpoena is relevant to the defendant's motive in urging implementation of the e-mail retention policy when he did. On the other hand, it would also be rational and logical to conclude that the defendant may have had no idea that a subpoena

-29-

had been served on the OIR and this event is completely unrelated to the defendant's push for implementation of the e-mail policy. This is all up to the jury to decide

This evidence, in light of its probative value, is not *substantially* outweighed by the danger of unfair prejudice. The defendant's arguments go to the weight of the evidence, not its admissibility.

## V.    CONCLUSION

The government previously moved for a pretrial ruling on all pending motions *in limine* in order to preserve the government's right to appeal any adverse decision. By order entered May 24, 2005, the Court reserved ruling on that motion until such time as all motions had been briefed and fully considered by the Court. By this ruling, along with the Court's order entered April 21, 2005, the government's motion is granted.

Based on the above, the Court, being otherwise fully and sufficiently advised, and in light of the parties' stipulation and the government's representations as outlined herein, HEREBY ORDERS that

    (1)    the defendant's motion *in limine* to exclude News Channel 5 reports and related "knowledge" evidence [DE #72] is DENIED;

    (2)    the defendant's motion *in limine* to exclude evidence of acts occurring after December 19, 2002 [DE #74] is GRANTED IN PART and DENIED IN PART, as outlined herein;

    (3)    the defendant's motion *in limine* to limit proof regarding the scope of the investigation [De #76] is DENIED;

    (4)    the defendant's motion *in limine* to exclude evidence relating to John Stamps [DE #78] is GRANTED IN PART and DENIED IN PART, as outlined herein;

    (5)    the defendant's motion *in limine* to exclude evidence of the defendant's relationship with Governor Sundquist [DE #80] is DENIED;

(6)     the defendant's motion *in limine* to exclude evidence of retention of counsel [DE #82] is DENIED as moot;

(7)     the defendant's motion *in limine* to exclude evidence of the date of service of the December 4, 2002, subpoena on the State of Tennessee [DE #84] is DENIED;

(8)     the defendant's motion *in limine* to exclude evidence relating to the procurement of contracts by ENA [DE #86] is DENIED; and

(9)     the government's outstanding motion *in limine* for pretrial ruling on the government's motion *in limine* and defendant's related motions [DE #90-2] is GRANTED.

This _30th_ day of _June_, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE

-31-